IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RAYMOND H. SUTTON,

            Petitioner,        Civil No. 09-1256-AA

          v.                ORDER

CHUCK SEELY,

            Respondent.

AIKEN, District Judge.

     Petitioner is in the custody of the Oregon Department of Corrections pursuant to a Judgment, dated October 20, 2003, from Jackson County Circuit Court after convictions for two counts of Sexual Abuse in the First Degree. Exhibit 101. After a jury convicted petitioner, the trial court imposed two 75 month sentences of imprisonment with 45 months of the second count to run consecutively to the first count and 30 months to run concurrently. Id.

     Petitioner directly appealed his convictions, but the Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Exhibits 105 - 109.

1 - ORDER

Petitioner filed an Amended Petition for Post-Conviction Relief, Exhibit 110, but the court denied relief.  The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review.  Exhibits 121 - 125.

Petitioner filed a petition under 28 U.S.C. sec. 2254 alleging:

**Ground One:** (i) [Denial of effective assistance of counsel]

**Supporting Facts:**
    Lack of objection by lawyer
    No investigation of claim by victim
    Lack of cross examination of victim

Petition (#2) p. 6.

Respondent moves to deny relief (#14) on the grounds that three of petitioner's claims were never fairly presented to the Oregon Supreme Court and are procedurally defaulted, and that the remaining claim was correctly denied in a state court decision that is entitled to deference.  Response (#14) p. 2.

Under 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State[.]"  Exhaustion occurs when a petitioner has given the state courts a "full and fair" opportunity to consider and resolve all federal claims.  Keeney v. Tomayo-Reyes, 504 U.S. 1, 10 (1992).  If a petitioner can present a claim to the state's Supreme Court, he must do so to properly exhaust that claim.  O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).

To "fairly present" a federal claim in state court,

habeas petitioners must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996).; <u>see also</u>, <u>Castillo v. McFadden</u>, 399 F.3d 993, 1000 (9th Cir. 2005).

Furthermore, to properly exhaust a claim the petitioner must present the federal claim to the state courts in a procedural context in which the claims' merits will be considered. <u>Castille v. Peoples</u>, 489 U.S. 346, 351-52 (1989); <u>Roettgen v. Copeland</u>, 33 F.3d 36, 38 (9th Cir. 1984; <u>Turner v. Compoy</u>, 827 F.2d 526, 529 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

Stated otherwise, each claim raised in a habeas petition must have been given one complete round of the state's appellate review process. <u>O'Sullivan v. Boerckel</u>, supra at 844-845, and the state courts must have had a full and fair opportunity to respond to any federal claim asserted by the petitioner. <u>Keeney v. Tamayo-Reyes</u>, <u>supra</u> at 10.

If a petitioner has failed to present a federal constitutional claim to the state's highest court (*i.e.*, has failed to exhaust state remedies) and can no longer do so because of a procedural bar, that claim is procedurally defaulted. <u>Boerckel</u>, 526 U.S. at 848, citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991). Once a petitioner has procedurally defaulted a claim, federal habeas corpus review is barred unless the petitioner can demonstrate: (1) cause for

3 - ORDER

the procedural default, and (2) actual prejudice from the failure. <u>Edwards v.</u> Carpenter, 529 U.S. 446, 451 (2000), <u>Coleman</u>, 501 U.S. at 750; <u>see also</u>, Wainwright<u> v. Sykes</u>, 433 U.S. 72 (1977); <u>Murray v. Carrier</u>, 477 U.S. 748 (1986); <u>Hughes v. Idaho Bd. of Corr.</u>, 800 F.2d 905 (9th Cir. 1986).

Cause for a procedural default exists only if petitioners "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." <u>Murray</u>, 477 U.S. at 488. Prejudice exists only if petitioners show that the procedural default "worked to [petitioner's] actual and substantial disadvantage." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982). Demonstrating a mere possibility of prejudice is insufficient. <u>Id</u>.

Procedural defaults may also be excused by demonstrating a "fundamental miscarriage of justice." <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000). To establish the fundamental miscarriage of justice exception to the exhaustion requirement requires a showing of actual innocence. <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995); <u>Calderon v. Thompson</u>, 523 U.S.538, 559 (1998).

Petitioner alleges that his attorney was ineffective because there was "no investigation of claims by victim"(claim 2) and "lack of cross examination by victim" (claim 3). Petition (#2) p. 6.

In his Amended Petition for Post-Conviction Relief

4 - ORDER

petitioner alleged five claims fo ineffective assistance of counsel. <u>See</u>, Exhibit 110. Petitioner did not allege that his attorney was ineffective for failing to investigate or cross-examine the victim. <u>Id</u>.

The post-conviction court denied petitioner's claims and he appealed, asserting only that counsel was inadequate for failing to object to hearsay and failing to object to inadmissible character evidence. Exhibit 121.

Petitioner's claims 2 and 3 were never presented to any Oregon court and did not complete a full round through the state appeal system. Therefore, claims 2 and 3 are procedurally defaulted. Petitioner has not established any cause and prejudice for his procedural default or entitlement to the fundamental miscarriage of justice exception to the exhaustion requirement.

Petitioner's claim that his lawyer "failed to object" is construed as attempting to allege his post-conviction claims that defense counsel was ineffective for failing to object to hearsay testimony by the arresting officer, Claims B (1) and (2), Exhibit 110, p. 4-7, and failed to object when the prosecutor improperly used evidence admitted into the trial for a limited purpose, Claim B (4). Exhibit 110, p. 10.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, habeas relief may be granted only when a state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law,

5 - ORDER

as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings."  28 U.S.C. § 2254(d);  Wiggins v. Smith, 539 U.S. 510, 520 (2003).

A state court's decision is "'contrary to' federal law if it fails to apply the correct controlling Supreme Court authority or comes to a different conclusion ... [from] a case involving materially indistinguishable facts." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (citing Bell v. Cone, 535 U.S. 685, 694).  The Supreme Court has held that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409 (2000).

"[I]t is past question that the rule set forth in Strickland, qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v Taylor, supra at 391.  Under Williams, a petitioner may therefore be granted habeas corpus relief on a claim of ineffective assistance of counsel only if the decision of the state court was contrary to, or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).

Under Strickland, a claim that counsel's assistance was so ineffective as to require reversal of a conviction has two components.  First, the petitioner must show that counsel's

performance was deficient; second, the petitioner must show that the deficient performance prejudiced the defense. Id. at 687.

The first prong of the Strickland test required the petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness. Strickland, supra at 688. The second component of the test requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome." Id.

In order to satisfy the prejudice requirement in the context of a plea agreement, the petitioner must demonstrate that there is a "reasonable probability that, but for counsel's errors, he would have not pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). In plea agreement cases, the "resolution of the 'prejudice' inquiry will depend largely on whether [an] affirmative defense likely would have succeeded at trial. Id. at 59.

In Bell v. Cone, 535 U.S. 685 (2002), the Court reiterated that when considering ineffective assistance of counsel claims:

> [J]udicial scrutiny of a counsel's performance must
> be highly deferential and that every effort [must]
> be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of

> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Thus, even when a court is presented with an
> ineffective-assistance claim not subject to
> §2254(d)(1) deference, a defendant must overcome the
> presumption that, under the circumstances, the
> challenged action might be considered sound trial
> strategy.

Bell, 535 U.S. at 695 (citations and quotations marks omitted).

When considering ineffective assistance of counsel claims under 28 U.S.C. § 2254(d), "it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

Failure to object to hearsay claim:  In his Amended Petition for Post-Conviction Relief, petitioner alleged two claims of ineffective assistance arising from his attorney's failure to object to alleged hearsay testimony. Petitioner's Amended Post-Conviction Petition alleged as Claim B(1):  "Trial counsel failed to object and move to strike hearsay testimony provided to the jury by Detective Ronald Walch (Walch) elicited to preemptively negate the defense theory to Count 1 in the prosecutor's case in chief." Respondent's Exhibit 110, p. 4. Petitioner alleged as Claim B(2): Trial counsel failed to object and move to strike introduction of inadmissible hearsay statements purportedly made by Moffitt to Tammy Henderson (Henderson) and then relayed by Henderson to Detective Walch regarding count 2 of th Indictment." Id., p. 6.

The PCR court found regarding the alleged hearsay claims:

"(1) The statements made by petitioner and heard by Ms.
Moffitt, were the cornerstone of the defense case. Trail
counsel made a strategic decision not to object to the

testimony because the statements made by petitioner's
girlfriend we helpful to the defense at whatever point
they came into evidence. (2) The hearsay testimony with
regards to the visit to the dog's gravesite was not
critical to the defense case.   The petitioner himself
admitted to visiting the grave site. Whether Mr. Sutton
and his granddaughter visited the gravesite was not the
critical issue.   The issue was whether the petitioner
abused his granddaughter at the gravesite. (3) The
statements with regards to Ms. Moffitt's ability to see
the victim and the petitioner behind the shop were
hearsay. However, objecting to the testimony would not
have made a difference because it was obvious to all
parties that Ms. Moffitt did not see the two behind the
shop. Moreover, the testimony regarding the short time
span was helpful to the defense case because it bolstered
the theory that there was not enough time for the abuse
to have occurred.   The petitioner has not shown that he
was prejudiced by these statements.

Respondent's Exhibit #119, Findings of Fact and Conclusions of Law

p. 8.

On appeal petitioner alleged as his First Assignment of Error:

"The post-conviction court erred in denying relief on petitioner's

claim that trial counsel was inadequate and ineffective for failing

to object to hearsay testimony regarding Moffitt's statements to

police and Henderson." Respondent's Exhibit 121, Appellant's Brief

p. 5.   Specifically, petitioner alleged the preserved error as

follows:

"Trial counsel failed to object and move to strike
introduction of inadmissible hearsay statements purportedly
made by Moffitt to Tammy Henderson and then relayed by
Henderson to Detective Walch regarding Count 2 of the
Indictment as follows:

'Q Now, after discussing the incident itself behind the
shop, did you talk about Smokey's grave?

* * * *

[Detective Walsh]  She told me that she didn't believe
that they actually went to Smokey's grave.  And I brought it
to her attention that Tammy had mentioned to me that  when she

9 - ORDER

brought [M] back and dropped her off at the lake, that during
small talk, I guess, that she had,   Tammy said that had
mentioned that.  And she denied that she had said that.

&ast;&ast;&ast;&ast;

"During cross-examination by the state, Moffitt testified
that she had never mentioned 'Smokey's Grave' to Henderson.
(Tr. 130)   The prosecution never elicited testimony from
Henderson that Moffitt had mentioned that petitioner and the
alleged victim had visited Smokey's grave.
      Defense counsel permitted Walch to impeach the testimony
of Moffit on a critical issue - petitioner's opportunity to
sexually abuse [M] at Smokey's grave - with inadmissible
hearsay.   Defense counsel's failure to object and move to
strike this testimony was objectively unreasonable.   There was
a reasonable probability that but for this testimony, the jury
would not have convicted petitioner on Count 2 of the
Indictment."

Respondent's Exhibit 121, Appellant's Brief, p. 5-6.

      Thus the claim alleged in petitioner's Amended Petition for

Post-Conviction Relief as B(1) was not pursued on appeal and not

exhausted. The testimony giving rise to petitioner's claim B(2), as

set forth above, is the only (hearsay) issue before the court. As

noted above the PCR court denied relief on petitioner's claim that

his counsel was ineffective for failing to object to this testimony

ruling in relevant part:

      "The hearsay testimony with regards to the visit to the
      dog's gravesite was not critical to the defense case.
      The petitioner himself admitted to visiting the
      gravesite.  Whether [petitioner] and his granddaughter
      visited the gravesite was not the critical issue.  The
      issue was whether the petitioner abused his granddaughter
      at the gravesite.

Respondent's Exhibit 119, Findings of Fact and Conclusion of Law,

p. 8.

      The state court decision denying petitioner's claim is

entitled to deference under 28 U.S.C. sec. 2254(d) because it is

not contrary to nor an unreasonable application of *Strickland*.  The PCR court factual findings are presumed correct because petitioner has not presented any clear and convincing evidence to the contrary. 28 U.S.C. sec. 2254(e)(1); Miller-el v. Cockrell, 537 U.S. 322, 340 (2003).

Respondent argues that Detective Walch's testimony concerning the out of court statement was not hearsay because it was "offered to establish what Ms. Moffitt said to Tammy Henderson in the course of his investigation," and not to prove the truth of the matter asserted. Response (#14), p. 11. Whether the testimony constituted hearsay is immaterial because as noted by the PRC court, it was "not critical to the defense." Walch's testimony cannot reasonably construed as "impeach[ing] the testimony of Moffitt on a critical issue - petitioner's opportunity to sexually abuse [M] at Smokey's grave." The prosecution did not need to prove that petitioner visited the gravesite with the victim because petitioner admitted that he had. Thus, petitioner's failure to object to the testimony was not deficient.

In addition, petitioner has failed to establish the second (prejudice) prong of Strickland. It was not disputed that petitioner visited the gravesite with the victim.  Thus, assuming *arguendo* the statements were inadmissible hearsay and used to impeach Moffitt's testimony, petitioner was not prejudiced by the testimony because the issue was undisputed.

Witness credibility / impeachment claim: Petitioner alleged as his PCR claim B(4): "Prior to trial, the court admitted evidence that

petitioner had previously abused Henderson [the victim's mother] solely to negate claims of absence of mistake. The prosecution, however, improperly used that evidence to attack Henderson's [a witness'] credibility" and impeach her character. Amended Petition for Post-Conviction Relief, Claim B(4). Exhibit 110, p. 10.

The PCR court found regarding the improper attack on credibility / impeachment claim:

> "Ms. Moffitt was called as a defense witness to testify that petitioner yelled at the victim to get away from him.   There was no basis to object to the district attorney's implications that Ms. Moffitt was at fault for not protecting the child.   Trial counsel cannot be found ineffective for failing to object."

Exhibit 119,  Findings of Fact and Conclusions of Law, p. 8-9.

On PCR appeal, petitioner alleged as his Second Assignment of Error: "The post-conviction court erred in denying relief on petitioner's claim that trial counsel was inadequate and ineffective for failing to object to improper impeachment of Moffitt with inadmissible character evidence." Id., p. 10.

The Court of Appeals affirmed the PCR court without opinion and the Oregon Supreme Court denied review.

In his PCR petition, petitioner alleged that his counsel was inadequate for failing to object when the prosecutor used evidence admitted into trial for a limited purpose of showing prior sex abuse to negate a mistake defense, and then it was later improperly used attack the witness' credibility by insinuating that she was responsible for the abuse because she knew of petitioner's history. Respondent's Exhibit 110, p. 10. Petitioner argued that counsel's failure to object "deprived petitioner of his right to confront the

state's case against him under Article I, sec. 11 and the Sixth and Fourteenth Amendments ... as well as his rights to a fair trial under the Fourteenth Amendment." <u>Id</u>.

Respondent argues:  "On appeal, however, petitioner changed his legal theory.  For the first time, he claimed that the testimony was objectionable because it attacked the credibility of his witness with extrinsic evidence or specific instances of conduct, forbidden by Oregon Evidence Code 608(2).  This is a completely different argument than the claim made at trial court - that the testimony had been used beyond the purpose for which it was admitted." Response (#14) p. 7.

Respondent further argues:  "Because petitioner did not preserve the claim that he raised in the Oregon Court of Appeals, it was not fairly presented to the state courts.  Because he did not present the claim that he *did* raise at the PCR trial to the Oregon Court of Appeals at all, that claim was never given 'a complete round' of the established appellate review process" and is procedurally defaulted." <u>Id</u>., p. 8.

Respondent's argument in this regard presents a close call. Petitioner unquestionably did change the emphasis (and arguably the grounds) of his claim on appeal.  However, an improper attack on witness credibility and impeachment of  character was alleged in the PCR trial court. Liberally construing the state court briefs I find that the improper impeachment of character claim is arguably exhausted for purposes of habeas corpus review.  However, assuming the claim is properly before the court, I find that it fails for

the reasons set forth below.

The argument that the evidence that petitioner had previously abused Henderson was admitted at petitioner's trial for the sole purpose of establishing absence of mistake and then subsequently improperly used to impeach Moffitt's character was not pursued on PRC appeal.  Therefore, I construe petitioner's claim in this proceeding as it was argued on PCR appeal, ie. that counsel was ineffective for not making an Oregon Evidence Code 608 objection.

The facts giving rise to petitioner's improper impeachment of character claim are as follows:  Petitioner's girlfriend, Delores Moffitt, testified in petitioner's defense.  On direct examination, she testified that she had heard petitioner yelling "get out of here" to the victim at the time the first instance of abuse occurred. Respondent's Exhibit 103, p. 124, 14 - 16.  The defense claimed argued that this proved that petitioner was not abusing the victim, but that the victim had come across petitioner while he was urinating, part of the mistake defense.

On cross-examination, Ms. Moffitt testified that shw was unaware of the specifics of petitioner's history of sexual abuse beyond rumor, and that there was no implicit understanding between her and the victim's mother that it was her responsibility watch over the victim in order to prevent petitioner from sexually abusing her.

The prosecution then recalled the victim's mother, Tammy Henderson, to the stand.  Mrs. Henderson testified that she had told Ms. Moffitt that petitioner had abused her as a child, and

14 - ORDER

that there was an understanding between them that Ms. Moffitt was to watch over the victim, impliedly to prevent petitioner from sexually abusing her.

On appeal from the PCR trial court, petitioner claimed that his counsel was constitutionally ineffective for failing to make a Rule 608 objection to Mrs. Henderson's testimony because it was a specific incidence of conduct that improperly impeached his witness' testimony.

Oregon Evidence Rule 608 (Evidence of character and conduct of witness) provides:

> "(1)  The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but:
>
>    (a) The evidence may refer only to character for truthfulness or untruthfulness; and
>
>    (b)  Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> (2)    Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in ORS 40,355, may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."

OEC 608(2) does not bar testimony that contradicts a specific matter that another witness has testified to on direct examination. State v. Schober, 678 P.2d 746, 748 (1983). In petitioner's case, Mrs. Henderson's testimony was introduced to contradict Ms. Moffitt's testimony on a specific matter, not to use a specific instance of her conduct to demonstrate her lack or credibility or

impeach her character.   Therefore the testimony was not covered by
OEC 608(2).   Petitioner's counsel had no basis to object to the
testimony and was not deficient for failing to do so.   In any
event, the objection would have been over-ruled. Therefore,
petitioner has failed to establish prejudice.

Based on all of the foregoing, petitioner's Petition (#2) is
denied.  This proceeding is dismissed.

## *Certificate of Appealability*

***Should petitioner appeal, a certificate of appealability is
denied as petitioner has not made a substantial showing of the
denial of a constitutional right. <u>See</u>, 28 U.S.C. § 2253(c)(2).***

IT IS SO ORDERED

DATED this <u>9th</u> day of January, 2011.


<u>/s/ ANN AIKEN</u>
Ann Aiken
United State District Judge